UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OLIVIA BORNSTEIN, individually and on behalf of all others similarly situated, | ) ) | Case No. 20-cv-11118-RGS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| v. | ) | |
| | ) | |
| BOSTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

LEGAL STANDARD .............................................................................................................4

ARGUMENT ..........................................................................................................................5

I.      BORNSTEIN CANNOT STATE A COGNIZABLE CLAIM CHALLENGING
THE QUALITY OF HER EDUCATION...........................................................................5

      A.     Bornstein Impermissibly Alleges Educational Malpractice .....................................5

      B.     Bornstein Seeks An Impermissible Intrusion Into Academic Freedom...................9

I.      BORNSTEIN FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ...............9

      A.     Bornstein Fails To Allege Any Express Contract.................................................10

      B.     Bornstein Fails To Allege Any Definite or Certain Promises ...............................12

II.     BORNSTEIN FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT...............14

III.    BORNSTEIN FAILS TO STATE A CLAIM FOR CONVERSION ..............................16

      A.     The Economic Loss Rule Bars Bornstein's Conversion Claim ............................16

      B.     Bornstein Fails To Assert A Deprivation Of Cognizable Property .......................17

CONCLUSION......................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abington Nat'l Bank v. Ashwood Homes, Inc.*,
  19 Mass. App. Ct. 503 (1985) ................................................................................................. 16

*Air Sunshine, Inc. v. Carl*,
  663 F.3d 27 (1st Cir. 2011) ..................................................................................................... 4

*Ambrose v. New England Ass'n of Schs. and Colls., Inc.*,
  252 F.3d 488 (1st Cir. 2001) ............................................................................................. 6, 7, 8

*Anderson v. Fox Hill Vill. Homeowners Corp.*,
  424 Mass. 365 (1997) ............................................................................................................. 17

*Arthur D. Little Int'l, Inc. v. Dooyang Corp.*
  928 F. Supp. 1189 (D. Mass. 1996) ...................................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 5

*Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*,
  490 F.3d 1 (1st Cir. 2007) ....................................................................................................... 9

*Bergeron v. New Hampshire*,
  Civil No. 18-cv-525-PB, 2018 WL 6834607 (D.N.H. Dec. 3, 2018) ..................................... 7

*Berkowitz v. President & Fellows of Harvard Coll.*,
  58 Mass. App. Ct. 262 (2003) ................................................................................................. 7

*Blake v. Smith*,
  No. 0300003B, 2006 WL 4114305 (Mass. Super. Ct. Dec. 11 2006) ................................... 15

*Bleiler v. Coll. of Holy Cross*,
  No. 11–11541–DJC, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) ................................. 8, 15

*Brooks v. AIG SunAmerica Life Assur. Co.*,
  480 F.3d 579 (1st Cir. 2007) ................................................................................................. 10

*Buck v. Am. Airlines*,
  476 F.3d 29 (1st Cir. 2007) ................................................................................................... 10

*Bulwer v. Mount Auburn Hosp.*,
  473 Mass. 672, 690 (2016) .................................................................................................... 10

*Cavaliere v. Duff's Bus. Inst.*,
  605 A.2d 397, 403 (Pa. Super. Ct. 1992) ............................................................................... 7

*David v. Neumann Univ.*,
  177 F. Supp. 3d 920 (E.D. Pa. 2016) ................................................................................... 11

*Doe v. Town of Framingham*,
965 F. Supp. 226 (D. Mass. 1997) ................................................................. 5

*G v. Fay Sch., Inc. by & through its Bd. of Trustees*,
282 F. Supp. 3d 381 (D. Mass. 2017) ........................................................... 12

*G. v. Fay Sch.*,
931 F.3d 1 (1st Cir. 2019) ............................................................................ 12

*Gibson v. Walden Univ., LLC*,
66 F. Supp. 3d 1322 (D. Or. 2014) .............................................................. 11

*Global Investors Agent Corp. v. Nat'l Fire Ins. Co.*,
76 Mass. App. Ct. 812 (2010) ...................................................................... 14

*Grand Pac. Fin. Corp. v. Brauer*,
57 Mass. App. Ct. 407 (2003) ...................................................................... 16

*Grutter v. Bollinger*,
539 U.S. 306 (2003) ................................................................................... 2, 9

*Guckenberger v. Boston Univ.*,
974 F. Supp. 106 (D. Mass. 1997) ...................................................... 9, 12, 17

*Hamilton v. Partners Healthcare Sys., Inc.*,
209 F. Supp. 3d 379 (D. Mass. 2016),
*aff'd*, 879 F.3d 407 (1st Cir. 2018) ............................................................. 5

*Host v. Gray*,
No. 10 MISC 444079 HMG, 2013 WL 1319609 (Mass. Land Ct. Apr. 2, 2013), *aff'd*,
85 Mass. App. Ct. 1110, 5 N.E.3d 968 (2014) .............................................. 14

*Krebs v. Charlotte Sch. of Law, LLC*,
NO., 3:17-CV-00190-GCM, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017)............................. 8

*Tel. Answering Serv. Of Bos., Inc. v. New Eng. Tel. & Tel. Co.*,
358 Mass. 822 (1971) ................................................................................... 10

*Lovelace v. Se. Massachusetts Univ.*,
793 F.2d 419 (1st Cir. 1986) .......................................................................... 9

*McLaughlin v. City of Lowell*,
No. CIV.A. 94–5069, 1998 WL 224929 (Mass. Super. Ct. Apr. 3, 1998) ................ 5

*Metro. Life Ins. Co. v. Cotter*,
464 Mass. 623 (2013) ................................................................................... 14

*Morris v. Brandeis Univ.*,
60 Mass. App. Ct. 1119, 2004 WL 369106 (2004) ................................. 6, 12, 14

*New York Times v. Sullivan*,
376 U.S. 254 (1964) ....................................................................................... 9

*Noble Foods v. Woodland Partners*, Inc.,
Civil No. 19-10324, 2019 WL 2918044 (D. Mass. July 8, 2019) ........................ 17

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016) ...................................................................... 11

*Regents of Univ. of Calif. v. Bakke*,
    438 U.S. 265 (1978) ..................................................................................................... 2, 9

*Rinsky v. Trs. of Boston Univ.*,
    No. 10cv10779–NG, 2010 WL 5437289 (D. Mass. Dec. 27, 2010) ................................ 11, 12

*Roe v. Loyola Univ. New Orleans*,
    No. 07–1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ........................................ 8

*Rolph v. Hobart & William Smith Colls.*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) ...................................................................... 11

*Russell v. Salve Regina Coll.*,
    890 F.2d 484 (1st Cir. 1989),
    *rev'd on other grounds*, 499 U.S. 225,
    *reinstated on remand*, 938 F.2d 315 (1st Cir. 1991) ............................................... 6

*S.C. Elec. & Gas Co. v. Westinghouse Elec. Corp.*,
    826 F. Supp. 1549 (D.S.C. 1993) .............................................................................. 17

*Salamon v. Terra*,
    394 Mass. 857 (1985) ................................................................................................. 15

*Schaer v. Brandeis Univ.*,
    432 Mass. 474 (2000) ................................................................................................. 6

*Schmid v. National Bank of Greece, S.A.*,
    622 F. Supp. 704 (D. Mass. 1985) ............................................................................ 18

*Shin v. Mass. Inst. of Tech.*,
    No. 020403, 2005 WL 1869101 (Mass. Super. Ct. June 27, 2005) ........................... 13, 17

*Singarella v. Boston*,
    342 Mass. 385 (1961) ................................................................................................. 10

*Soto-Torres v. Fraticelli*,
    654 F.3d 153 (1st Cir. 2011) ...................................................................................... 4

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) ........................................................................................ 10, 11

*Stewart v. Loring*,
    87 Mass. 306 (1862) ................................................................................................... 16

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957) .................................................................................................... 2

*Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*,
    534 F. Supp. 340 (D. Mass. 1982) ............................................................................ 14

*Thornton v. Harvard Univ.*,
    2 F. Supp. 2d 89 (D. Mass. 1998) ............................................................................. 15

*U.S. ex rel. Carpenter v. Abbott Labs., Inc.*,
    723 F. Supp. 2d 395 (D. Mass. 2010) ....................................................................... 5

*Wollaston Industries, LLC v. Ciccone*,
    2019 WL 6841987 (D. Mass. Dec. 16, 2019) ........................................................ 18

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

## Other Authorities

66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1962) ..................................... 14

Restatement (Third) of Torts: Liab. for Econ. Harm § 3 (2020) ................................. 17

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Trustees of Boston University ("the University")[1] respectfully submits this brief in support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

From its founding in 1839, Boston University's central mission has been the vigorous pursuit of knowledge by its students, faculty, staff and community.  Faced with the COVID-19 pandemic, the University has continued to pursue that mission on behalf of its students while at the same time, taking necessary measures to protect their health and safety.  Specifically, in March 2020, after and federal and state orders declaring public health emergencies and restricting public gatherings to protect the public health, the University continued to deliver its curriculum by transitioning to remote education.  This swift response protected the health and safety of the University community while enabling students to maintain uninterrupted progress toward their degrees.  The University also continued to offer a variety of student services, and provided financial support to students facing unexpected expenses due to the pandemic, including, additional funding through traditional financial aid and special emergency funds established at some of the University's schools and colleges.  In addition, the University extended CARES Act funding to all University students who requested relief.

Plaintiff Olivia Bornstein now complains that these measures amount to breach of contract, unjust enrichment and conversion.  Bornstein does *not* deny that the University acted properly to protect its students, faculty and staff.  Rather, she acknowledges the University's transition to remote learning was "an unavoidable consequence" of the pandemic.  Bornstein does *not* accuse

---

[1]  "Trustees of Boston University" is the official corporate name of defendant Boston University.

the University of preventing her from continuing her academic program.  She concedes she was taught by the same professors, with the same classmates, and in the same courses as before the pandemic.  Bornstein does *not* contend that the University deprived her of the same number of course credits toward graduation as she would have obtained before the pandemic.  Bornstein also does *not* deny that the University pursued the only realistic alternative available to maintain students' learning while protecting their health and safety.  Bornstein's pleading thus amounts to nothing more than an assertion that remote learning is less effective and less valuable than in-person instruction.

Such claims challenging the quality of educational experience are barred at the threshold by well-settled Massachusetts law that prohibits adjudication of claims for "educational malpractice."  Numerous precedents reject attempts to second-guess the quality of the education and services a student receives.  These common-law precedents have constitutional roots based upon a university's academic freedom "to make its own judgments as to education."  *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003).  As the Supreme Court has recognized, the "'four essential freedoms of a university'" include an institution's right "'to determine for itself on academic grounds who may teach, what may be taught, ***how it shall be taught***, and who may be admitted to study.'"  *Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 312 (1978) (*quoting Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring in result) (emphasis added).  This Court should hold that all three counts of the Complaint fail to state a claim because they represent impermissible attempts to challenge "how [the University's curriculum] shall be taught."

Independent of this educational-malpractice bar, the Complaint also warrants dismissal because Bornstein fails to allege necessary elements of each of her claims.  She does not identify any contract that requires the University to deliver education or student services in a particular

manner or in an in-person rather than remote format, even in the face of a pandemic.  Her unjust

enrichment claim fails to allege any unjust or inequitable use of tuition and fees for anything other

than the purpose for which they were intended—namely, furthering the University's educational

mission by providing instruction and services to students.  And the conversion claim is barred by

the "economic loss" rule because it rests on the same facts as the breach of contract claim, and

even if it did not, Bornstein fails to allege any specific monies that were converted.

This Court should grant the University's motion to dismiss.[2]

## STATEMENT OF FACTS

In response to the federal and Massachusetts governments declaring emergencies in March

2020 as the infections and death rates from COVID-19 climbed, the University acted swiftly to

protect students, faculty and staff and to preserve the continuity of its students' education by

converting its ongoing educational offerings to a remote rather than in-person format.  *See* Compl.

¶¶ 1-2.  Bornstein expressly acknowledges the transition to remote learning was an "unavoidable

consequence of this emergency."  *Id*. at ¶ 2.  She nonetheless brings this lawsuit on behalf of a

putative class of students enrolled in the University's Spring 2020 semester, alleging claims for

breach of contract, unjust enrichment and conversion, all seeking refunds of tuition.

Notably, Bornstein does *not* contend the shift to remote learning prevented students from

completing their academic coursework, being awarded the expected credits toward graduation, or

---

[2]  This is one of five substantially similar actions against Boston University pending before this Court, and to which the Court ordered separate responses.  *See Julia Dutra, et al. v. Trustees of Boston University*, 1:20-cv-10827, Dkt. 13.  The five motions to dismiss differ only in minor respects to address any pleading variations.  Specifically, all of the complaints assert claims for breach of contract, and four of the five allege unjust enrichment.  The fifth complaint, *Valaauina Silulu, et al.*, *v. Trustees of Boston University*, 1:20-cv-10914, asserts restitution by quasi-contract instead.  Finally, the *Dutra* pleading alleges separate claims for each category of alleged loss–tuition, student fees, and housing charges.

receiving student services.  *See* Compl. ¶ 12.[3]  Rather, the basis of each claim is an alleged injury

from the purportedly diminished quality of students' education and access to student services.  *Id*.

¶¶ 4-5, 13-14.  The Complaint alleges without factual support that "students enrolled in online

college courses receive lower grades not only in those courses, but in courses during subsequent

semesters as well." *Id*. at ¶ 5.

Fatal to her Complaint is the fact that Bornstein fails to identify any written or implied

contract that governed the manner in which the University would deliver education or services to

its students.  She fails to identify any statement in any website, application, admission materials

or student course book creating a contractual commitment to a particular format in which classes

would be taught.  Instead, she relies on a series of isolated website statements describing such

vague attributes of campus life as "the core of BU's spirit," students' "'game day' enthusiasm for

everything from a poetry slam to the Redstone Film Festival to community service," and "a

buzzing campus filled with bright, ambitious, energetic students."  *Id*. at ¶ 19.  As demonstrated

below, Bornstein's allegations fail to state the causes of action asserted and should be dismissed.

## LEGAL STANDARD

A court evaluating a motion to dismiss need not accept as true "statements in the complaint

that merely offer legal conclusions couched as facts or are threadbare or conclusory." *Air

Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (*quoting Soto-Torres v. Fraticelli*, 654 F.3d

153, 158 (1st Cir. 2011)).  "If the recited facts 'do not permit the court to infer more than the mere

possibility of misconduct,' the complainant has failed to show entitlement to relief." *Hamilton v.*

---

[3]  Although Bornstein alleges a sailing course was cancelled, Compl. ¶ 15, this offering was
extracurricular and its cancellation has no bearing on her ability to fulfill her academic degree or
to graduate on schedule.

*Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 387 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ARGUMENT

## I.   BORNSTEIN CANNOT STATE A COGNIZABLE CLAIM CHALLENGING THE QUALITY OF HER EDUCATION

Bornstein contends remote learning is of "lesser value" than in-person learning, (Compl. ¶ 5), and alleges "the quality of [class] discussion sessions has diminished significantly since the class was moved from in-person to online," (*id.* at ¶ 14).  To begin with, these allegations are purely speculative, and are belied by the undisputed fact that the University's faculty and staff continued deliver University curriculum for the uninterrupted pursuit and attainment of scheduled degrees.  Plaintiff's claims may not proceed on the basis of such "unlikely speculation" regarding the supposed quality of remote learning.  *See U.S. ex rel. Carpenter v. Abbott Labs., Inc.*, 723 F. Supp. 2d 395, 401 (D. Mass. 2010) ("[T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculation. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation.") (internal citations omitted).  Even if these claims are not dismissed as speculative, however, they warrant dismissal as impermissible intrusions into the University's educational autonomy.

### A.   Bornstein Impermissibly Alleges Educational Malpractice

Bornstein's Complaint in its entirety cannot overcome an insurmountable threshold hurdle: educational malpractice "is not recognized under Massachusetts law."  *Doe v. Town of Framingham*, 965 F. Supp. 226, 230 (D. Mass. 1997).  As a result, "if the [plaintiff] alleges negligence in the evaluation, placement, or delivery of educational services . . . [the defendant]

5

would be exempt from liability." *McLaughlin v. City of Lowell*, No. CIV.A. 94–5069, 1998 WL 224929, at *5 (Mass. Super Ct. Apr. 3, 1998). As the First Circuit has recognized, "[c]ourts consistently have rejected students' claims of educational malpractice against schools" in light of "the lack of a satisfactory standard of care by which to evaluate educators' professional judgments and the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions." *Ambrose v. New England Ass'n of Schs. and Colls., Inc.*, 252 F.3d 488, 499 (1st Cir. 2001). All three causes of action require dismissal under this well-settled line of cases.

*First*, Bornstein's contract claim concedes she continued to receive academic instruction from the same professors in the same courses after the transition to remote learning. *See* Compl. ¶¶ 12-14. Aside from suspension of an extracurricular sailing activity—barred by Massachusetts stay-at-home laws—she alleges only that University courses after the transition to remote learning "are not of equivalent value to in-person courses," and caused a "loss of the full academic" experience received on-campus. *Id*. at ¶¶ 3-4. She speculates that remote learning will result in lower grades during the Spring and subsequent semesters, that the "quality" of class "discussion sessions has diminished significantly," and contends faculty were unprepared for remote classes. *Id*. at ¶¶ 12, 14, 20.

These allegations constitute a quintessential educational malpractice claim. This Court could not adjudicate this claim without impermissibly assessing "the efficacy of the operations of academic institutions," *Ambrose*, 252 F.3d, at 499. Any such inquiry would invade the "[g]reat deference extended to university decision-making on academic . . . matters." *Morris v. Brandeis Univ.*, 60 Mass. App. Ct. 1119, 2004 WL 369106 (2004); *see Schaer v. Brandeis Univ.*, 432 Mass. 474, 482 (2000) (*quoting Russell v. Salve Regina Coll.*, 890 F.2d 484, 489 (1st Cir. 1989), *rev'd*

*on other grounds*, 499 U.S. 225, *reinstated on remand*, 938 F.2d 315 (1st Cir. 1991) (recognizing "the principle that '[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities'"); *Berkowitz v. President & Fellows of Harvard Coll.*, 58 Mass. App. Ct. 262, 269-70 (2003) ("[I]n the absence of a violation of a reasonable expectation created by the contract…or arbitrary and capricious conduct by the university [internal citations omitted] courts are not to intrude into university decision-making").

Bornstein cannot escape this result by labeling her educational malpractice claim one for breach of contract.  A plaintiff may not employ "creative labeling" to ask a court to "substitute [its] judgment for that of professional educators."  *Ambrose*, 252 F.3d at 497; *see also Bergeron v. New Hampshire*, Civil No. 18-cv-525-PB, 2018 WL 6834607, at *1 (D.N.H. Dec. 3, 2018) (claim that school "failed to adequately prepare [plaintiff] to assert his constitutional rights" dismissed as an impermissible educational malpractice challenge).  Other jurisdictions have not hesitated to dismiss educational malpractice claims that challenge educational quality and value when framed as contract claims.  *See, e.g., Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. Ct. 1992) ("We are persuaded by the reasoning employed by many courts that have refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education.").

*Second*, Bornstein's unjust enrichment claim is based on the same allegations as the breach of contract claim and would require the same impermissible inquiry into educational decision-making.  *Compare* Compl. ¶ 36 ("A valid contract existed between Plaintiff and Defendant. In exchange for tuition payments by Plaintiff, Defendant was to provide to Plaintiff in-person classroom instruction and related academic activities….") *with id*. ¶ 42 ("Plaintiff conferred the

benefit on Defendant of tuition payments, in exchange for which Defendant was to provide in-person classroom instruction and related academic activities….").  Where courts have dismissed student contract claims, they also reject unjust enrichment claims based on the very same facts. For example, in *Bleiler v. Coll. of Holy Cross*, No. 11–11541–DJC, 2013 WL 4714340 (D. Mass. Aug. 26, 2013), the court rejected an expelled student's unjust enrichment claim under Massachusetts law based on the lack of refund for tuition and fees because the student "paid for and received an education, academic credit, room, board and other services" even if he did not receive a degree.  *Id.* at *18.  Similarly, here, Bornstein paid for and received an education and academic credit.  And unlike in *Bleiler*, Bornstein is still expected to receive a degree from the University.  *See* Compl. ¶¶ 10-11.  "Payment of tuition and fees cannot be unjust if the students received the benefit for which they paid," namely, an education and progress towards a degree. *Krebs v. Charlotte Sch. of Law, LLC,* No. 3:17-CV-00190-GCM, 2017 WL 3880667 at *6 (W.D.N.C. Sept. 5, 2017); *see also Roe v. Loyola Univ. New Orleans*, No. 07–1828, 2007 WL 4219174, at *2 (E.D. La. Nov. 26, 2007) (dismissing contract and unjust enrichment claims after university rearranged instruction at a different school and by different professors in the wake of Hurricane Katrina).

Third, the same educational-malpractice principles apply equally to plaintiff's conversion claim, which is grounded in the same facts as the contract and unjust enrichment counts.  *See* Compl. ¶¶ 48-50; *see Ambrose v. New England Ass'n of Sch. & Colls.*, No. CIV. 99-0292-B, 2000 WL 1195363, at *4 (D. Me. Aug. 7, 2000), *aff'd sub nom. Ambrose v. New England Ass'n of Sch. & Colls., Inc.*, 252 F.3d 488 (1st Cir. 2001) (declining to review supposed breach of educational accreditation standards under a "misrepresentation" cause of action).

### B.      Bornstein Seeks An Impermissible Intrusion Into Academic Freedom

Massachusetts's well-settled common law barring educational malpractice claims has constitutional roots, embodying protections of "[a]cademic freedom" that have long "been viewed as a special concern of the First Amendment." *Bakke*, 438 U.S. at 312.  Universities enjoy a strong degree of "educational autonomy," *Grutter*, 539 U.S. at 329, including the discretion to determine the content of their curricula and the manner in which educational subjects shall be taught.  Just as the First Amendment constrains the common law of defamation, *see New York Times v. Sullivan*, 376 U.S. 254, 265 (1964), so it constrains the common law of contract, restitution and tort as they bear on the freedom of a university to determine its curriculum and the manner in which it is delivered.  Indeed, Massachusetts law explicitly recognizes that, "because '[t]he student-university relationship is unique,'" contract law "need not be rigidly applied" in claims brought against universities.  *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150-51 (D. Mass. 1997).

Any adjudication determining that remote learning is supposedly less effective than in-person learning thus would unconstitutionally infringe the University's freedom "to determine what shall be taught and how it shall be taught." *Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 19 (1st Cir. 2007).  If matters "such as course content, homework load, and grading policy are core university concerns" protected by academic freedom, *Lovelace v. Se. Mass. Univ.*, 793 F.2d 419, 426 (1st Cir. 1986), so too is the decision to shift to remote learning to protect the safety of the University's community during a pandemic.  The well-grounded discretion afforded university officials warrants dismissal of the Complaint.

### I.      <u>BORNSTEIN FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT</u>

Independent of the above educational-malpractice and academic-freedom bars, Bornstein's contract claim warrants dismissal for the separate reason that it does not identify any contractual

promise regarding the form or manner of education that the University failed to honor.  Moreover, Massachusetts law forecloses Bornstein's reliance on indefinite language on the University's website to form a binding contract.

### A.    Bornstein Fails To Allege Any Express Contract

Massachusetts law provides that "[t]o prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016) (*quoting Singarella v. Boston*, 342 Mass. 385, 387 (1961)).  It is further "essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (applying Massachusetts law) (*quoting Tel. Answering Serv. of Bos., Inc. v. New Eng. Tel. & Tel. Co.*, 358 Mass. 822 (1971)); *see also Brooks v. AIG SunAmerica Life Assur. Co.,* 480 F.3d 579, 586 (1st Cir. 2007) ("Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with "substantial certainty," the specific contractual promise the defendant failed to keep").  Accordingly, "in a contract action, this irreducible minimum requires the pleader to 'explain what obligations were imposed on each of the parties by the alleged contract.'" *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007).[4]

---

[4] Courts nationwide require contract claims against universities to set forth the specific promise the school failed to honor to survive a motion to dismiss. *See, e.g., Lee v. Univ. of N.M.*, – F. Supp. 3d –, No. CIV 17-1230 JB\LF, 2020 WL 1515381, *50 (D.N.M. Mar. 30, 2020); *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405-06 (W.D.N.Y. 2017); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 369-70 (S.D.N.Y. 2016); *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 (D. Or. 2014).

Bornstein's contract claim fails to allege a contractual promise that the University failed to honor requiring the University, in exchange for tuition, to provide in-person instruction or services as opposed to substitute services taking into account the exigencies of a pandemic.  Compl. ¶ 36. A similar situation was presented in *Squeri v. Mount Ida College*, in which the First Circuit affirmed this Court's dismissal of a breach of contract claim against Mount Ida College based on the school's abrupt closure as a result of insolvency.  954 F.3d 56, 61-62.  The plaintiffs there failed to state a claim for breach of contract because they "d[id] not allege the terms of any … contract or that specific terms required earlier disclosure of the closing" of the college.  *Id*. at 71-72.  Although they made "passing reference to enrollment deposits and the fact that students gave up the chance to enroll at other schools by choosing Mount Ida," the plaintiffs "fail[ed] to explain how th[o]se actions formed an express or implied contract which obliged Mount Ida to provide earlier notice of its difficulties to its students than it did."  *Id*.  So too here where Bornstein has not identified the "terms of any . . . contract or that specific terms required" the University to provide in-person instruction in the midst of a pandemic.  *Id*; *see Rinsky v. Trs. of Boston Univ.*, No. 10cv10779–NG, 2010 WL 5437289, at \*11 (D. Mass. Dec. 27, 2010) (dismissing claim that university was contractually obligated to protect a graduate student from sex discrimination in an off-campus internship because plaintiff "failed to offer what exactly the alleged contract promised with regard to her educational environment, offering no quotations from the BU handbook, promotional materials, internship descriptions, or class syllabi."); *Guckenberger*, 974 F. Supp. at 148-50 (Although the "relationship between a university and a student is contractual in nature…courts should be slow to intrude into the sensitive area of the student-college relationship" unless the promise is "definite and certain.").

Bornstein's failure to cite *any* identifiable contractual promise by the University for in-person instruction warrants dismissal of her breach of contract cause of action as a matter of law.

**B.      Bornstein Fails To Allege Any Definite or Certain Promises**

Bornstein likewise fails in her effort to derive a contract from generalized statements on the University's website that have no bearing on the methods used to deliver the University's curriculum.  Under Massachusetts law, although university brochures, catalogs, and policies may in certain circumstances form the basis of a contract between a student and university, the underlying promise "must . . . be definite and certain so that the promisor should reasonably foresee that it will induce reliance."  *Rinsky*, 2010 WL 5437289, at *11 (*quoting Guckenberger*, 974 F. Supp. at 150); *see also Morris*, 2004 WL 369106, at *3 n.6 ("To the extent that [plaintiff] claims that certain promotional materials also formed the basis of a contract with Brandeis and that Brandeis breached its 'generalized representations' to treat its students with 'fairness and beneficence,' any promises contained in these materials were too vague and indefinite to form an enforceable contract.").  Where a handbook contains generalized representations that are aspirational or too vague to form a certain and definite promise, such provisions are not contractually enforceable.  *G v. Fay Sch., Inc. by & through its Bd. of Trustees*, 282 F. Supp. 3d 381, 399 (D. Mass. 2017), *aff'd sub nom. G. v. Fay Sch.*, 931 F.3d 1 (1st Cir. 2019).  Bornstein does not allege that any of the generalized statements she cites were incorporated into any express contractual agreement; accordingly, they must be sufficiently definite standing alone for the University to reasonably foresee that students would rely on them.

The Complaint fails to allege any statements pertaining to the method of instruction that the University would use.  Bornstein does not point to a single statement by the University requiring in-person instruction as opposed to remote learning with the same professors, classmates

and course materials in a pandemic.  Instead, Bornstein relies on statements that are far too generalized to create enforceable obligations for the University, and make no assurances whatsoever regarding the method of delivering the curriculum.  For example, marketing statements on the University's website describing "Hands-On Learning" or "enthusiasm for everything from a poetry slam to the Redstone Film Festival to community service" are neither definite nor certain; nor are they related to the choice between in-person and remote learning that might be necessitated for student and faculty safety in a pandemic.  Compl. ¶ 19

In *G. v. Fay School*, the First Circuit agreed that statements in a school's handbook that the school would "work with, and respect students in physical need" were not a "sufficiently definite promise to justify reasonable reliance" that the school would modify its educational equipment to accommodate a student's disability.  931 F.3d at 12-13 (internal citations and quotations omitted). Instead, the court held that the handbook statements were "exactly the sort of generalized, aspirational statements that are insufficiently definite to form a contract."  *Id*.  Likewise, in *Shin v. Massachusetts Institute of Technology*, the court granted summary judgment in favor of MIT on a contract claim that alleged the school failed to provide medical services to a student, because the generalized statements supporting the claim "d[id] not rise to the level of a 'specific promise' that the Plaintiffs relied upon."  No. 020403, 2005 WL 1869101, at *8 (Mass. Super. Ct. June 27, 2005).  The same is true here.  The statements on the University's website cherry-picked for inclusion in the Complaint are simply "too vague and indefinite to form an enforceable contract" to provide in-person rather than remote instruction.  *Morris*, 2004 WL 369106, at *3 n.6.  This is particularly so when remote instruction advances a student uninterrupted toward the same degree.

Finally, because Bornstein has not alleged the existence of an enforceable contract, she necessarily fails to allege any *breach* of contract.  *Host v. Gray,* No. 10 MISC 444079 HMG, 2013

WL 1319609, at *7 (Mass. Land Ct. Apr. 2, 2013), *aff'd*, 85 Mass. App. Ct. 1110 (2014) ("In the absence of a valid, enforceable contract, there can be no merit to his claims for breach of contract."). Absent a breach, there can be no cognizable claim for damages.

## II.     BORNSTEIN FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Unjust enrichment claims require a showing of "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982) (*quoting* 66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1962)). Therefore, plaintiffs "asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a quality that turns on the reasonable expectations of the parties.'" *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (*quoting Global Investors Agent Corp. v. Nat'l Fire Ins. Co.*, 76 Mass. App. Ct. 812, 826 (2010)). Bornstein's second cause of action for unjust enrichment based on money paid for tuition fails to state a cause of action upon which relief can be granted. Compl. ¶ 42.

The Complaint fails to plausibly allege any obligation to issue refunds because, as it admits, in the face of a pandemic and state and national emergency orders, the University has continued to provide Bornstein and her fellow students with an education in the same courses, with the same professors and classmates, counting for uninterrupted credits toward their degrees. *See id.* at ¶¶ 4, 22. Bornstein does not (nor, logically, could she) allege that it would be unfair, improper, or unjust for the University to continue to use tuition to support the cost of that education. *See id.* at ¶¶ 16, 44.

Moreover, Bornstein has not alleged that the University saved money and profited as a result of transitioning to remote instruction. Accordingly, she fails to allege the kind of unfair

profits that can demonstrate "unjust enrichment of one party and unjust detriment to the other party." *Salamon v. Terra*, 394 Mass. 857, 859 (1985); *see Blake v. Smith*, No. 0300003B, 2006 WL 4114305, at \*10 (Mass. Super. Ct. Dec. 11 2006) (affirming dismissal of an unjust enrichment claim because the plaintiff failed to show that the defendants "have allegedly been unjustly enriched . . . or have received improper benefits").

Further, Massachusetts courts have recognized it is not inequitable, illusory, or otherwise improper for schools to retain students' tuition and fees where the school provided education and academic credit, and they have rejected claims seeking a refund or non-payment on that basis.  In *Bleiler,* the court rejected the plaintiff's unjust enrichment claim in which he sought a tuition reimbursement for not receiving a degree due to a disciplinary action because "[the plaintiff] paid for and received an education, academic credit, room, board and other services," even if he did not receive a degree, which he likely expected to receive.  *Bleiler*, 2013 WL 4714340, at \*18 (D. Mass. Aug. 26, 2013); *Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998) (dismissing equitable claims regarding a loan repayment program because the plaintiff did not "reasonably rely" on a promise made by the university).  Even where students did not attend courses and thus, unlike here, were not provided *any* education, tuition refund claims have been denied under contract or quasi-contract theories.  *See Stewart v. Loring*, 87 Mass. 306, 306 (1862) (rejecting tuition refund despite the fact plaintiff never used the defendant's gymnasium facilities because plaintiff was ill).

The Complaint nowhere explains why the University may not justly retain and use tuition and fees for the very purposes for which they were paid—the education of its students.  Nor does the Complaint suggest that the University took *any* steps with the purpose or effect of improperly enriching itself, rather than covering the costs of remote education in the face of a pandemic.  To

the contrary, Bornstein expressly admits that closing campus and transitioning to remote classes was "an unavoidable consequence" of the pandemic.  Compl. ¶ 2.  In short, Bornstein's failure to allege any inequitable benefit to the University is dispositive and requires dismissal, as a matter of law, of her unjust enrichment claim.

## III.     BORNSTEIN FAILS TO STATE A CLAIM FOR CONVERSION

"The elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . .'" *Grand Pac. Fin. Corp. v. Brauer*, 57 Mass. App. Ct. 407 (2003) (*quoting Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 507 (1985)).  Independent from the educational malpractice precedents that bar this claim (*see* above Section I), Bornstein fails to plead conversion.

### A.     The Economic Loss Rule Bars Bornstein's Conversion Claim

Where, as here, a plaintiff's claim sounds in contract, the economic loss rule bars her from asserting that same theory through a tort such as conversion.  The economic loss rule "is 'founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.'" *Arthur D. Little Int'l, Inc. v. Dooyang Corp.* 928 F. Supp. 1189, 1202 (D. Mass. 1996) (*quoting S.C. Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F. Supp. 1549, 1557 (D.S.C. 1993)).  "'Failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made.'" *Noble Foods Inc. v. Woodland Partners*, Inc., Civil No. 19-10324, 2019 WL 2918044 at *3 (D. Mass. July 8, 2019) (*quoting Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 823 (1997)); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm § 3 (2020) cmt. B

("When a party's negligence in performing or negotiating a contract causes economic loss to the counterparty, remedies are determined by other bodies of law: principally the law of contract.")

Here, Bornstein's conversion claim implicates the economic loss rule precisely because she relies on a contractual relationship between the University and students formed by the students' tuition payments.  Compl. ¶ 36.  Where the asserted basis for damages rests on a purported contractual relationship, a tort claim such as conversion fails as a matter of law.

### B.    Bornstein Fails To Assert A Deprivation Of Cognizable Property

Additionally, Bornstein cannot state a conversion claim based on the University's retention of "the tuition paid by Plaintiff" (Compl. ¶ 47) because the Complaint does not identify any specific amount or pool of money allegedly converted.

Money can only "be the subject of a claim for conversion provided it is a specific pool or fund of money in which the plaintiff has a possessory interest." *Wollaston Industries, LLC v. Ciccone*, 2019 WL 6841987, at *2 (D. Mass. Dec. 16, 2019).  Furthermore, "[c]onversion requires the wrongful exercise of dominion over personalty, including money, to which a plaintiff has an immediate right of possession." *Schmid v. Nat'l Bank of Greece, S.A.*, 622 F. Supp. 704, 713 (D. Mass. 1985).  Here, Bornstein does not allege any specific fee, charges, or amounts that have been improperly retained.  Indeed, it is unclear whether plaintiff contends the University has converted the entirety of her tuition or only certain portions.  Far from identifying a specific pool or fund of money, the closest description offered by Bornstein is some unspecified amount that has allegedly been "improperly withheld."  Compl. ¶ 50.  Such vague descriptions do not suffice.

### CONCLUSION

For the reasons stated, this Court should dismiss Bornstein's Complaint with prejudice in its entirety.

DATED:  August 14, 2020                    Respectfully submitted,

                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


                                      By */s/ Kathleen M. Sullivan*
                                           Kathleen M. Sullivan (BBO No. 551053)
                                           Shon Morgan (*pro hac vice*)
                                           Crystal Nix-Hines (*pro hac vice*)
                                           Marina Lev (*pro hac vice*)
                                           865 South Figueroa Street, 10th Floor
                                           Los Angeles, California 90017-2543
                                           Telephone:    (213) 443-3000
                                           Facsimile:    (213) 443-3100
                                           kathleensullivan@quinnemanuel.com
                                           shonmorgan@quinnemanuel.com
                                           crystalnixhines@quinnemanuel.com
                                           marinalev@quinnemanuel.com

                                           Harvey Wolkoff (BBO No.532880)
                                           111 Huntington Ave., Suite 520
                                           Boston, MA 02199-3600
                                           Telephone:    (612) 712-7100
                                           Facsimile:    (612) 712-7200
                                           harveywolkoff@quinnemanuel.com

                                           *Attorneys for Defendant,*
                                           *Boston University*

## CERTIFICATE OF SERVICE

        I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  August 14, 2020


                            */s/ Kathleen M. Sullivan*
                            Kathleen M. Sullivan